**RECEIVED**

SEP 1 4 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
IN AND FOR THE WESTERN DISTRICT OF LOUISIANA
Shreveport Division

LOUIS P. "TREY" BARBER, III, and
DEEDRA BARBER,

Plaintiff,

VERSUS

CITIFINANCIAL MORTGAGE
COMPANY, INC. OF NEW YORK
F/K/A ASSOCIATES HOME EQUITY
SERVICES, INC.,

Defendant.

**CV05-1627 S**

Civil Action No.

**JUDGE HICKS**
**MAG JUDGE HORNSBY**

JUDGE

MAGISTRATE-JUDGE

JURY DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW INTO COURT, through undersigned counsel, come LOUIS P. "TREY" BARBER,

III, and DEEDRA BARBER, husband and wife in community at all relevant times, and plaintiffs

in the above entitled and captioned matter, who respectfully pray for Judgment of this Honorable

Court against defendant, CITIFINANCIAL MORTGAGE COMPANY, INC. OF NEW YORK

F/K/A ASSOCIATES HOME EQUITY SERVICES, INC., as set forth in the following

complaint, as follows:

### PLAINTIFF

1.

Plaintiffs, LOUIS P. "TREY" BARBER, III, and DEEDRA BARBER, are major

domiciliaries of Shreveport, Caddo Parish, Louisiana, and victims of repeated violations of law

and false credit reportings by defendant. Plaintiffs were and are husband and wife in community

at all relevant times herein.

## DEFENDANT

### 2.

Made Defendant herein is CITIFINANCIAL MORTGAGE COMPANY, INC. OF NEW YORK F/K/A ASSOCIATES HOME EQUITY SERVICES, INC., which may also hereinafter be referred to as "Citifinancial," a foreign corporation authorized to do and doing business in the State of Louisiana and who may be served with process through its registered agent for service of process: C T CORPORATION SYSTEM, 8550 UNITED PLAZA BLVD., BATON ROUGE, LOUISIANA 70809.

## JURISDICTION OF THE COURT and VENUE

### 3.

Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. 1331. Further, the matter in controversy exceeds $75,000.00, exclusive of costs and interest and the parties to these proceedings are citizens of different states. 28 U.S.C. 1332. Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. 1367. Venue is proper in this District as the Defendant resides in this judicial district. 28 U.S.C. 1391(b),(c).

## REQUEST FOR TRIAL BY JURY

### 4.

Plaintiffs request a trial by jury.

## REQUEST FOR EXEMPLARY/PUNITIVE DAMAGES

### 5.

Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendant under the provisions of the Fair Credit Reporting Act and states' laws, including Louisiana.

## REQUEST FOR COSTS OF LITIGATION AND ATTORNEYS' FEES

### 6.

Plaintiffs respectfully request that this Honorable Court award plaintiffs their litigation expenses and other costs of litigation and reasonable attorneys' fees incurred in this litigation, in accordance with the provisions of the Fair Credit Reporting Act and other laws.

## GENERAL FACTUAL BASIS

### 7.

Plaintiffs are consumers.

### 8.

Defendant is a consumer residential mortgage lender, consumer credit financier, and a furnisher of credit information to the national credit reporting agencies.

### 1997

### 9.

Plaintiffs secured a mortgage in the sum of $57,932.49 from defendant.

### 10.

Plaintiffs' mortgage is assigned number 0303882 by defendant.

11.

Plaintiffs' monthly payment is/was $771.72

## March, 2002

12.

On March 19, 2002, plaintiffs filed for Chapter 13 bankruptcy protection under case no.

BK-02-10916, United States Bankruptcy Court, Western District of Louisiana, Shreveport

Division.

13.

The bankruptcy action was prompted by severe medical problems, surgery and

chemotherapy treatments required by plaintiff and his son.

14.

In late March, 2002, defendant lost plaintiff's promissory note and advertised the lost note

in The Times.

## April, 2002

15.

In April, 2002, defendant filed a proof of claim in the sum of $56,793.49, in plaintiffs'

bankruptcy proceeding.  Defendant listed the arrearage on the mortgage as $8,778.55

16.

On April 24, 2002, despite the automatic stay, defendant filed an ordinary process

foreclosure suit against plaintiffs and plaintiffs' home and property located at 143 Albert Street,

Shreveport, Louisiana, in a lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber,

et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

**May, 2002**

17.

In May, 2002, plaintiffs' bankruptcy 341 notice, schedules, statements, and plan were filed and served upon defendant through the same defense counsel as had improvidently filed the ordinary process foreclosure lawsuit.

**July, 2002**

18.

In July, 2002, defendant filed a request for a curator in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

**August, 2002**

19.

In August, 2002, plaintiffs' bankruptcy plan was modified.

**September, 2002**

20.

On September 3, 2002, defendant improvidently took a default judgment in the sum of $46,793.49, against plaintiffs, in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

21.

On September 22, 2002, defendant improvidently requested the issuance of a writ of fiera fascias and notice of seizure in an effort to execute on its improperly taken judgments in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First

Judicial District Court, Caddo Parish, Louisiana.  A Sheriff's Sale was set for November 12, 2002.

22.

On September 27, 2002, plaintiffs' plan was confirmed by the bankruptcy court, without objection by defendant.

23.

On September 30, 2002, just three days after confirmation of the plan, defendant improvidently took an in rem judgment in the sum of $56,793.49 against plaintiffs' home and property, located at 143 Albert St., Shreveport, Louisiana, in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

24.

The in rem judgment is precisely in the same and inaccurate sum of the proof of claim filed by defendant.

**November, 2002**

25.

On November 15, 2002, defendant improvidently requested the issuance of a second writ of fiera fascias and second notice of seizure in an effort to execute on its improperly taken judgments in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

26.

On November 26, 2002, plaintiffs' counsel wrote defense counsel and advised defendant

Page 6 of 29

that the defendant's course of conduct and filings were clearly in violation of the automatic stay. Plaintiffs' counsel demanded that defendant immediately cancel the writ of seizure; have the judgments canceled and retracted; dismiss the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana; and credit plaintiffs' account for any fees and expenses defendant claimed as a result of the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

### December, 2002

#### 27.

On December 18, 2002, defendant's counsel wrote plaintiff's counsel and claimed that the violations of the automatic stay were inadvertent and unintentional and he agreed to immediately cancel the writ of seizure, have the personal and in rem judgments canceled and retracted, dismiss the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana, and credit plaintiffs' account for any fees and expenses defendant claimed as a result of the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

#### 28.

Despite these assurances, plaintiffs later learned that defendant failed to cure the numerous violations of the automatic stay and breached the agreement to cure the defaults in lieu of a motion for contempt and sanctions.

## September, 2003

### 29.

In September, 2003, defendant attempted to execute on the default judgment and in rem judgments, both improvidently taken against plaintiffs and their property, back on September 3, 2002, and September 30, 2002.

### 30.

On September 22, 2003, defendant improvidently requested the issuance of a third writ of fiera fascias and third notice of seizure in an effort to execute on its improperly taken judgments in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

### 31.

Again, the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana, is the same lawsuit improvidently filed in violation of the automatic stay, back in 2002, and is the same lawsuit which defendant's counsel assured plaintiffs' counsel that it would be dismissed.

## November, 2003

### 32.

On November 18, 2003, Judge Callaway entered an adequate protection order which, in part, nullified and made void the default judgment and in rem judgments improvidently taken against plaintiffs and their property, back on September 3, 2002, and September 30, 2002. The order reinstated the mortgage dated December 18, 1997. The order further reinstated the automatic stay as to defendant's secured claims.

33.

On November 26, 2003, plaintiff's counsel, Miss Alexander, wrote defendant's counsel to memorialize that the judgments taken by defendant were wrongful, improvident and harmful to plaintiffs and that defendant's counsel agreed to take all necessary steps to annul the judgments and cause them to be erased from the public records and plaintiffs' credit records. Yet, defendant's counsel failed to do so and left the judgments on the face of the public record and on plaintiffs' credit records.

**March, 2004**

34.

In March, 2004, plaintiffs notified defendant of plaintiffs' intention to refinance their mortgage and move their mortgage away from defendant.

35.

Loan America was engaged by plaintiffs for the purpose of finding sub-prime lenders willing to work with plaintiffs while plaintiffs were in bankruptcy.

**April, 2004**

36.

On April 7, 2004, plaintiffs received the Trustee's Report and it included inaccurate information from defendant. Defendant had reported that plaintiffs owed defendant two debts: one in the sums of $48,449.20 and another in the sum of $61,409.22

37.

The Trustee disbursed $12,960.02 to defendant as of April 7, 2004.

38.

With assurances from defendant that it had taken steps to retract and erase from the public records and reportings the aforementioned improvidently taken judgments, plaintiffs took their home, property and mortgage outside of his bankruptcy plan in order to refinance it and move his mortgage away from defendant.

39.

Judge Callaway signed an Order removing the home and property from the bankruptcy based upon the request.

**May, 2004**

40.

On May 24, 2003, plaintiffs applied for home refinancing to escape defendant's mortgage lending practices and their loan was denied by Universal Home Mortgage due to a tri-merge credit report containing inaccuracies and other violative reportings caused by defendant, namely, foreclosure reportings, inaccurate past due amounts, inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

**June, 2004**

41.

In June, 2004, a Notice of Seizure was issued by the Sheriff in suit no. 486,182, First Judicial District Court, Caddo Parish, Louisiana. The Notice suggested a sale date of August 4, 2004.

42.

On June 5, 2004, plaintiffs wrote detailed dispute letters to each of the national credit reporting agencies, Trans Union, Experian, and Equifax/CSC, contesting the defendant's foreclosure reportings, defendant's inaccurate past due amounts, defendant's inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

43.

In June, 2004, plaintiffs applied for home refinancing to escape defendant's mortgage lending practices and their loan was denied by Allied Home Mortgage due to a tri-merge credit report containing inaccuracies and other violative reportings caused by defendant, namely, defendant's foreclosure reportings, defendant's inaccurate past due amounts, defendant's inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

44.

Plaintiffs qualified for the $102,000.00 loan based on home equity, employment and income, however plaintiffs' credit scores were ruined by the inaccurate and illegal credit reportings caused by defendant, namely defendant's foreclosure reportings, defendant's inaccurate past due amounts, defendant's inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the

lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First

Judicial District Court, Caddo Parish, Louisiana.

45.

On June 21, 2004, defendant improvidently requested the issuance of a fourth writ of fiera

fascias and fourth notice of seizure in an effort to execute on its improperly taken judgments in

another lawsuit, no. 486,182, First Judicial District Court, Caddo Parish, Louisiana.

46.

Defendant claimed the sum of $56,793.49, which is precisely the sum defendant claimed in

the proof of claim it filed in the bankruptcy proceeding.

## July, 2004

47.

On July 29, 2004, plaintiffs wrote a second detailed dispute letters to each of the national

credit reporting agencies, Trans Union, Experian, and Equifax/CSC, contesting the defendant's

foreclosure reportings, defendant's inaccurate past due amounts, defendant's inaccurate late pay

notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in

the sum of $46,793 taken by defendant in  the lawsuit styled "Citifinancial Mortgage, Inc. v.

Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

## August, 2004

48.

On or about August 7, 2004, Trans Union sent plaintiffs a post-reinvestigation credit

report copy showing that defendant verified as proper and accurate the following items over

plaintiffs' detailed disputes: defendant's foreclosure reportings, defendant's inaccurate past due

amounts, defendant's inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

### September, 2004

49.

In September, 2004, plaintiffs re-applied for home refinancing to escape defendant's mortgage lending practices and their loan was again denied by Allied Home Mortgage due to a tri-merge credit report containing inaccuracies and other violative reportings caused by defendant, namely, defendant's foreclosure reportings, defendant's inaccurate past due amounts, defendant's inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

50.

On September 2, 2004, plaintiffs verified that the improvidently taken judgments still have not been retracted and nullified insofar as the public records in Caddo Parish, Louisiana and defendant took no steps toward compliance with the agreement to cure their violations of the automatic stay. The clerk verified that defendant made no filing to nullify its judgments.

51.

On September 14 and 18, 2004, plaintiffs wrote another detailed dispute letters to each of the national credit reporting agencies, Trans Union, Experian, and Equifax/CSC, contesting the

defendant's foreclosure reportings, defendant's inaccurate past due amounts, defendant's inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

52.

On September 21, 2004, plaintiff's counsel wrote defendant's counsel and requested that defendant suspend the scheduled Sheriff's Sale in connection with the pending foreclosure and seizure of plaintiff's home and property located at 143 Albert St., Shreveport, Louisiana.

53.

On September 22, 2004, defendant proceeded with the Sheriff's Sale and sold plaintiff's home and property despite the notice and request not to proceed with the Sheriff's Sale, as provided to defendant on September 21, 2004.

54.

On September 22, 2004, plaintiffs' home was sold at Sheriff's Sale in accordance with defendant's actions and request for a meager sale price of $72,000.00.  Plaintiffs were forced from their home and had to move into a motel due to unusually short delays imposed by the buyer of the home.

55.

On or about September 30, 2004, plaintiffs applied for home financing through A&B Mortgage, who tried to place their mortgage needs with a lender, but their loan was denied by all of the lenders consulted due to the credit report containing inaccuracies and other violative

Page 14 of 29

reportings caused by defendant, namely, defendant's foreclosure reportings, defendant's inaccurate past due amounts, defendant's inaccurate late pay notations [showing 120+ days delinquent], and the improvidently and illegally taken judgment in the sum of $46,793 taken by defendant in the lawsuit styled "Citifinancial Mortgage, Inc. v. Mabel Godwin Barber, et al," no. 466,441, First Judicial District Court, Caddo Parish, Louisiana.

56.

In September, 2004, and before the Sheriff's Sale, plaintiffs had a sizeable equity in their home and property.

57.

Defendant caused the Sheriff's Sale to proceed and plaintiff's home and property sold for a meager $72,000.00

**October, 2004**

58.

In October, 2004, plaintiffs' Equifax/CSC credit reports showed reportings by defendant claiming that plaintiffs were 120+ delinquent on their mortgage, a $0 balance owed, and a foreclosure status.

**December, 2004**

59.

Plaintiffs repeatedly tried to refinance in order to move their mortgage away from defendant.  Plaintiffs were unable to do so due to defendant's failure to retract and remove the improvidently taken judgments and failure to retract false credit reportings made about plaintiffs.

**Additional Allegations**

60.

Defendant's acts and omissions prevented plaintiffs from being able to obtain re-financing and move their mortgage to a different lender. In essence, defendant held plaintiffs captive in the mortgage.

61.

Defendant recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiffs with reckless disregard for the truth.

62.

Defendant's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiffs and caused severe humiliation, and emotional distress and mental anguish.

63.

Defendant was notified of the errors and disputes, once Plaintiffs became aware of the facts sufficient, however, Defendant continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate, misleading, and false information about the Plaintiffs.

64.

Despite the plaintiffs' disputes, Defendant failed to appropriately react to the disputed mortgage reporting errors and continued to falsely report said false reportings from plaintiffs.

65.

Further, plaintiffs contested defendant's credit reporting errors to the national credit reporting agencies and, within the delays allowed by law, the credit reporting agencies advised

Defendant that plaintiffs disputed the false credit reportings.

66.

Despite receipt of the same disputes a number of times, Defendant repeatedly reported the false, derogatory information to third persons and verified its false credit reportings about plaintiffs to those agencies.

67.

According to the consumer reporting agency reports, Defendant continued to falsely report about plaintiffs.

68.

Defendant also breached their various and multiple agreements and contracts with the consumer reporting agencies by continuously reporting false credit information about plaintiffs.

69.

Defendant has likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2[b], by failing to conduct a reasonable and adequate investigation into plaintiffs' disputes conveyed directly to defendant and directed to defendant via the national credit reporting agencies.

70.

Defendant also likewise violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2[b], by failing to reasonably and truthfully respond to reinvestigation requests and by further supplying and verifying inaccurate and false information to those agencies and third persons.

71.

Defendant continued to report false and inaccurate information and failed to retract, delete and suppress false and inaccurate information about the plaintiffs, as described more fully herein.

72.

Defendant is aware that its reportings and activities would [and will] damage plaintiffs and their ability to enjoy life and utilize the credit rating and reputation property rights they secured.

73.

The consumer reporting agencies maintain subscriber contracts and relationships with Defendant separately and individually, under which Defendant is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

74.

Under the subscriber contracts Defendant owed a number of duties, including the duty to report truthful and accurate information about its customers and about others whom it reported or accessed data.

75.

On numerous occasions, Defendant reported, via its contractual and legal agents, the consumer reporting agencies, false and inaccurate information about the plaintiffs, as described more fully herein.

76.

Defendant is liable for the acts and omissions of its employees, attorneys and agents.

## C O U N T S

### COUNT 1 - NEGLIGENCE

77.

Defendant owed duties of reasonable care to plaintiffs.

78.

Defendant failed to exercise reasonable care and prudence in failing to properly account

for plaintiffs' mortgage payments, by failing to cease collection actions after being notified of

plaintiffs' bankruptcy and the automatic stay, by pursuing litigation against plaintiffs in violation

of bankruptcy laws, by failing to comply with an agreement to cure the ill effects of improvidently

taken judgments in violation of bankruptcy laws, by failing to cure the face of the public records,

by foreclosing on plaintiffs' home and property, by reporting inaccurate information about

plaintiffs, each subsequent reporting and re-reporting, the handling and reinvestigation of data

about plaintiffs, all made the subject of this Lawsuit, and which consequently caused damaged

plaintiffs.

## COUNT 2 - DEFAMATION

79.

Defendant recklessly, maliciously and/or intentionally, published and disseminated false

and inaccurate information concerning Plaintiffs with reckless disregard for the truth of the

matters asserted.

80.

Defendant's publishing of such false and inaccurate information has severely damaged the

personal and consumer reputation of Plaintiffs and caused severe humiliation, emotional distress

and mental anguish to plaintiffs.

81.

Defendant was notified of inaccuracies by plaintiffs, directly and through the dispute

mechanism contemplated by section 1681s-2[b] of the FCRA, however, the defendant continued

to fail to perform reasonable reinvestigations and continued to verify inaccurate information and continued to issue and/or publish report(s) to third parties which contained inaccurate information about plaintiffs.

82.

Defendant has, with willful intent to injure and/or maliciously, defamed plaintiffs.

## COUNT 3 - FURNISHER

## FAIR CREDIT REPORTING ACT, 1681s-2[b]

83.

Further, consumer reporting agencies also advised defendant that plaintiffs disputed the subject credit reportings. Each separate notice triggered duties under section 1681s-2[b] of the FCRA.

84.

Despite receipt of the same disputes a number of times, defendant failed to respond, failed to acknowledge the disputes and/or repeatedly reported the false, derogatory information to the consumer reporting agencies in violation of the Act.

85.

According to the national consumer reporting agencies' reports, in each instance, Defendant continued to falsely report about plaintiffs.

86.

Defendant  likewise willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2[b], by failing to properly conduct a reasonable reinvestigation and by failing to supply accurate and truthful information.

87.

Rather, Defendant continued to report false and inaccurate information and failed to retract, delete and suppress false and inaccurate information it reported about the plaintiffs.

88.

Defendant failed to conduct an investigation or reinvestigation with respect to consumer credit data it reported and repeatedly re-reported about plaintiffs.

89.

Defendant  failed to review all relevant and pertinent information provided to it by the consumer reporting agencies and plaintiffs.

90.

Defendant, on many occasions, failed to acknowledge plaintiffs' disputes and to advise the consumer reporting agencies of receipt of such disputes and complaints with regard to consumer credit data it had been reporting and re-reporting about plaintiffs.

91.

Defendant was well aware that its reportings and activities would [and will] damage plaintiffs and their ability to enjoy life and utilize their credit rating and reputation property.

92.

Defendant willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2[b], on multiple occasions.

## COUNT 4 - REAL ESTATE SETTLEMENT PRACTICES ACT,

### RESPA - SECTIONS 2605 and 2609

93.

RESPA's primary purpose is to protect home buyers from material non-disclosures in settlement statements and abusive practices in the settlement process.

94.

Plaintiffs sent multiple qualified written requests to defendant, directly and via counsel, demanding proper accounting of their mortgage.

95.

A qualified written request is a written correspondence directed to defendant which identifies the borrower/author of the letter, identifies the account number at issue, and contains a statement of reasons as to why the borrower/author thinks the account [or accounting] is in error and describes the dispute.  Plaintiffs sent such disputes directly and via counsel to defendant.

96.

Under RESPA, defendant must provide a written response acknowledging the receipt of a qualified written request within twenty days of receiving the borrower's letter. 12 U.S.C. 2605(e)(1)(A).  Defendant failed to do so on each occasions.

97.

The defendant was required to do one of three things within sixty days of receiving the requests for plaintiff: (1) correct the borrower's account and inform the borrower of those corrections in writing; (2) investigate and provide a written explanation to the borrower of the reasons that the servicer believes the borrower's account is correct; or (3) investigate and provide

a written explanation to the borrower of the reasons that the servicer cannot obtain the information that the borrower is requesting.  Defendant failed to do so on each occasion.

98.

Also, during the sixty days after the servicer receives a qualified written request from the borrower, the servicer may not provide information regarding an alleged overdue payment relating to the borrower's letter to a consumer reporting agency.  Defendant failed to do so on each occasion.

99.

Each separate violation is a separate and distinct violation and cause of action.

100.

Defendant failed to account for plaintiff's monies, billed them improperly, and failed to apply monies properly.

101.

Section 10 of RESPA, 12 U.S.C. 2609, requires defendant to properly and timely apply and account for funds paid by plaintiffs.

102.

RESPA provides rules for handling those funds and insuring that funds are handled with care and diligence and allocated properly.

103.

Defendant failed to comply with RESPA requirements.

## COUNT 5 - FAIR CREDIT BILLING ACT, 15 U.S.C. 1666, ET. SEQ.

104.

Defendant  violated the Fair Credit Billing Act on multiple occasions.

105.

The false credit reportings and communications with plaintiffs constitute "billing errors."

106.

Despite disputes, Defendant failed to properly respond.

107.

Defendant willfully, or alternatively, negligently, violated the Fair Credit Billing Act, 15 U.S.C. 1666, et. seq.

## COUNT 6 - BREACH OF CONTRACT

108.

Plaintiffs and defendant, through counsel, reached an agreement whereby defendant would take a number of steps to resolve defendant's flagrant violations of the automatic stay and the entry of illegal judgments, improper foreclosure proceedings and other issues addressed herein.

109.

Defendant failed to comply with the agreement reached between the parties.

110.

Good cause existed for the agreement.

111.

Plaintiffs sustained damages due to the breach of the agreement by defendant.  Plaintiffs relied on defendant's assurances and agreement in taking their home outside of the bankruptcy

protection and in trying to refinance the home.

### 112.

Defendant's breach was in bad faith or, alternatively, in good faith.

## COUNT 7 - VIOLATIONS OF AUTOMATIC STAY, 11 U.S.C. 362

### 113.

Plaintiffs assert that defendant violated the bankruptcy automatic stay order and failed to cure problems caused by their violations.

### 114.

Defendant improvidently filed a foreclosure action against plaintiffs.

### 115.

Defendant improvidently took over steps in pursuing a foreclosure action against plaintiffs.

### 116.

Defendant improvidently had default personal and default in rem judgments entered against plaintiffs and plaintiffs' property and home.

### 117.

Defendant issued writs of fiera fascias against plaintiffs and plaintiffs' property and home and had sheriffs' sales set.

### 118.

Defendant failed to retract and cure the illegal lawsuit, judgments and reportings arising from those acts.

### 119.

Defendant caused plaintiffs to rely on their assurance to cure the violations of the

automatic stay.  Defendant failed to cure its violations and ultimately took adverse action against plaintiffs causing tremendous damage when plaintiffs were unable to refinance due to defendant's violations of the stay and subsequent sale of the home at Sheriff's Sale.

120.

Defendant has willfully violated the automatic stay of plaintiffs' bankruptcy.

121.

Plaintiffs sustained damages due to defendant's willful violation of the automatic stay of plaintiffs' bankruptcy.

122.

Plaintiffs also sustained damages in reliance upon defendant's assurances and agreement to cure its violations of the automatic stay of plaintiffs' bankruptcy.

## COUNT 8 - LOUISIANA UNFAIR AND DECEPTIVE TRADE PRACTICES

## LUPTA, 51 LA.R.S. 1401, ET. SEQ.

123.

Plaintiffs assert that defendant committed unfair and deceptive practices as outlined herein.

124.

Unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful under LUPTA.

125.

A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

126.

La.R.S. 51:1409 provides for private action by a person suffering loss of money or movable property because of another's use of an unfair or deceptive practice.

127.

Defendant's open and repeated violations of a bankruptcy court order would fit the scope and purpose of LUPTA.

128.

Further, pursuit of wrongful foreclosure and continued inaccurate, improper, and damaging credit reportings also fit the scope and purpose of LUPTA.

129.

Defendant violated LUPTA in its acts and omissions complained of herein.

**Additional Allegations**

130.

The above and foregoing actions, inactions and fault of defendant, as to each and every count and claim, have proximately caused a wide variety of damages to plaintiffs including but not limited to out-of-pocket expenses, loss of their home and property and related damages, loss of the equity in their home, displacement from their home and property, moving and living expenses, storage expenses, loss of property due to the move, damage to their credit, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, shock, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, statutory damages, litigation expenses, expert witness fees, attorneys' fees, and for punitive/exemplary damages, and court costs.

131.

Defendant's false credit reporting about plaintiffs have been a substantial factor in causing credit denials and other damages.

WHEREFORE PLAINTIFFS, LOUIS P. "TREY" BARBER, III, and DEEDRA BARBER, PRAY that after all due proceedings be had there be judgment herein in favor of Plaintiffs and against Defendant, CITIFINANCIAL MORTGAGE COMPANY, INC. OF NEW YORK F/K/A ASSOCIATES HOME EQUITY SERVICES, INC., as follows:

1)   That there be Judgment in favor of LOUIS P. "TREY" BARBER, III, and DEEDRA BARBER and against CITIFINANCIAL MORTGAGE COMPANY, INC. OF NEW YORK F/K/A ASSOCIATES HOME EQUITY SERVICES, INC., for all reasonable damages sustained by Plaintiffs including but not limited to out-of-pocket expenses, loss of their home and property and related damages, loss of the equity in their home, displacement from their home and property, moving and living expenses, storage expenses, loss of property due to the move, damage to their credit, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, shock, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, statutory damages, litigation expenses, expert witness fees, attorneys' fees, and for punitive/exemplary damages, and court costs, together with legal interest thereon from date of judicial demand until paid in full; and

2)   That this Honorable Court order the defendant which engaged in illegal and violative activities and supplied information to credit reporting agencies, to reinvestigate and correct the credit reports, data emanations, and credit histories of and concerning Plaintiffs or any of plaintiffs' personal identifiers and cease any and all collection activities made against plaintiffs.

FURTHER Pray for all such additional, general and equitable relief as may be necessary and proper in the premises.

Respectfully submitted,

**Bodenheimer, Jones, Szwak & Winchell, LLP**

By: _____
   **David A. Szwak, La.BR #21157, TA**
   **Mary E. Winchell, La.BR #21408**
   401 Market Street, Ste. 240
   American Tower
   Shreveport, Louisiana 71101
   (318) 424-1400
   FAX 424-1476
   www.bjswlaw.com
**Counsel for Plaintiffs**